**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 29, 2011

No. 10-41185

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ALBERT ADDISON BUSH,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:10-CR-549-1

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Following a two-day trial, a jury convicted Albert Bush of two related drug offenses: conspiracy to possess with intent to distribute over 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A); and possession of over 1,000 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. On appeal, Bush argues that numerous errors at trial warrant reversal of his conviction. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-41185

FACTS

On the morning of February 22, 2010, Albert Bush, a former Marine, drove a truck and trailer from Roma, Texas north towards Hebbronville, Texas. His route took him through a border patrol checkpoint. There, a trained dog detected the scent of illegal contraband coming from the trailer. The dog's alert led the agents to search Bush's trailer. Quickly, they discovered a large metal container that had been hidden by stacks of wood. Inside it were approximately 1,895 kilograms (about 4,000 pounds) of marijuana.

The agents placed Bush under arrest, apprised him of his rights, and took him to a detention facility. During interrogation, Bush told the agents that he was innocent and had been hired by a Raul Ruiz-Trevino to haul wood. He explained that he had transported wood for Ruiz-Trevino in the past.

Later in the interview, the agents told Bush that there was over 1,000 pounds of marijuana in the container. According to the agents, Bush responded by saying, "I f**ked up. If I knew there was going to be that much marijuana, I would have asked for more money."

Bush's truck was searched. Among the discoveries were a notebook and a cigarette box containing a small amount of methamphetamine. The entries in the notebook were in Bush's handwriting and outlined the need to maintain some sort of operational security. There were references to border security, possible electronic surveillance of his hotel room, and the need to remain out-of-sight during his trip. It concluded, "Tactical Assessment: Very poor cover."

Bush was questioned about the notebook. He admitted to writing the entries, but he maintained that he transcribed a conversation he heard between two men who were staying in the hotel room next to his. At trial, the Government introduced into evidence hotel records and unimpeached testimony establishing that no one stayed next to Bush during his time at the hotel.

No. 10-41185

When first confronted with the methamphetamine, Bush denied knowing about it.  Later, Bush admitted the methamphetamine was his, but insisted that a friend had given it to him.  Before trial, Bush moved to exclude the methamphetamine, arguing it was unfairly prejudicial.  The district court denied the motion.  Nevertheless, while the methamphetamine was mentioned during the Government's opening statement, no evidence of the drug was offered during its case in chief.  Bush's attorney was the first to mention the drug during trial, questioning a DEA agent about the field test of the drug.  The defense also asked Bush about the drug on direct examination.

At the close of trial, the defense requested a jury instruction on third-party guilt, as part of its strategy to say that Ruiz-Trevino tricked Bush into hauling the marijuana.  The court denied the request, noting that the court's instructions were sufficient because they informed the jury that both the crimes charged required Bush to take part "knowingly."  Bush also objected to the district court's instruction that the jury could find Bush guilty if it determined he was deliberately indifferent to the presence of the marijuana.

Bush timely appealed, raising five issues.

DISCUSSION

I.    *Admitting Evidence of Methamphetamine*

Bush complains the district court violated Rule 404(b) when it admitted into evidence the fact that Bush was in possession of methamphetamine.  Rule 404(b) generally prohibits "[e]vidence of other crimes, wrongs, or acts" except to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b).

The parties dispute whether we should review the district court's decision for invited error, plain error, or abuse of discretion.  We need not resolve the dispute due to our conclusion that, under the most demanding of the three standards, namely, abuse of discretion, we find no error.

No. 10-41185

To determine whether it was an abuse of discretion to admit evidence under Rule 404(b), we employ a two-part test. *See United States v. Olguin*, 643 F.3d 384, 389 (5th Cir. 2011). First, we determine if the evidence is relevant to an issue other than character. *Id.* Second, we see whether the probative value of the evidence was substantially outweighed by unfair prejudice and if it can pass through the Rule 403 filter. *Id.* The second step "involves a commonsense assessment of all the circumstances surrounding the extrinsic offense." *United States v. Templeton*, 624 F.3d 215, 221 (5th Cir. 2010) (quotation marks and citation omitted).

A precedent both parties argue to us is *United States v. Williams*, 957 F.2d 1238 (5th Cir. 1992). There, the district court had admitted evidence that a person who was being prosecuted for smuggling cocaine in his checked luggage also had a marijuana cigarette in his wallet at the time of the arrest. *Id.* at 1240. We concluded that the marijuana had probative value and was relevant, because the evidence made it more likely that Williams knew about the cocaine in his suitcase. *Id.* at 1244. For similar reasons, we conclude that the methamphetamine was relevant and had some probative value.

Regardless, Bush argues the evidence should have been excluded because its unfair prejudice substantially outweighed any probative value. We consider no substantial and unfair prejudice to arise in a prosecution for possessing so substantial a quantity of one drug by revealing to jurors that the defendant also possessed a small quantity of another drug. The probative value of the latter possession to prove the former may be minimal, but so is the prejudice.

In addition, unfair prejudice can be "greatly minimized" by a district court's limiting instruction. *United States v. Cooks*, 589 F.3d 173, 183 (5th Cir. 2009). We once stated that if the instruction is clear that the jury should consider the evidence for a specific, proper purpose, "there is little danger that presentation of the extrinsic evidence will cause unfair prejudice or confusion of

No. 10-41185

the issues or will mislead the jury." *United States v. Williams*, 900 F.2d 823, 827 (5th Cir. 1990). Here, the district court gave an admonition about the use of evidence about methamphetamine immediately after the drug was first discussed during trial. It was reiterated by the court at the close of trial. These affirmative steps made it much less likely that the evidence would be unduly prejudicial. Accordingly, even if the methamphetamine were only slightly probative, it was not substantially outweighed by any unfair prejudice. *See United States v. Garcia Mendoza*, 587 F.3d 682, 689 (5th Cir. 2009). The district court did not abuse its discretion.

## II.    *Erroneous Jury Instruction*

Bush claims the district court erred by refusing to offer his requested jury instruction. He argues that a defendant is entitled to receive an instruction on his theory of the case. *See United States v. Simkanin*, 420 F.3d 397, 410 (5th Cir. 2005). At one point, caselaw went so far as to state that a defendant is entitled to an instruction that "precisely and specifically, rather than merely generally or abstractly, points to his theory of defense." *Perez v. United States*, 297 F.2d 12, 16 (5th Cir. 1961). Such an emphasis has disappeared. A district court's refusal of a defense instruction will be reversed as an abuse of discretion "only if the requested instruction (1) was a substantially correct statement of the law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the defendant's ability to present a given defense." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (quotation marks and citation omitted).

Bush requested the following instruction:

You have heard evidence that Raul Trevino-Ruiz[1] previously committed an act similar to the ones charged in this case. This

---

[1] At trial, the parties referred to Raul Ruiz-Trevino as Raul Trevino-Ruiz.

evidence is to be considered in deciding whether Raul Trevino-Ruiz, rather than Mr. Bush, committed the crimes with which Mr. Bush is now charged. If you have a reasonable doubt that Mr. Bush is the person who committed the offenses charged, you must give him the benefit of that doubt and find him not guilty.

Rather than give that instruction, the district court explained that the jury "must be convinced" beyond a reasonable doubt:

that two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute a controlled substance; second, that the defendant knew of the unlawful purpose of the agreement; third, that the defendant joined in the agreement willfully, that is, with intent to further its unlawful purpose; and, fourth, that the overall purpose of the conspiracy involved at least 1,000 kilograms of marijuana.

For the other charge, possession with intent to distribute, the court instructed:

you must be convinced that the government has proved each of the following beyond a reasonable doubt: First, that the defendant knowingly possessed a controlled substance; second, that the substance was, in fact, marijuana; third, that the defendant possessed the substance with intent to distribute it; and, fourth, that the quantity of marijuana was at least 1,000 kilograms.

The instruction continued, "before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with intent to bring about the crime." Reiterating the point, it said, "you may not find any defendant guilty unless you find beyond a reasonable doubt that . . . the defendant voluntarily participated in [the crime's] commission with the intent to violate the law." The court then instructed the jury that it could not convict "if the defendant had no knowledge of the principal's criminal venture."

Bush seizes on the fragment of the jury instruction that the jurors should not consider the guilt of others "except as you are otherwise instructed." He asserts that this charge prevented the jurors from considering Ruiz-Trevino's

guilt. Not so. If the jury believed that Ruiz-Trevino was the mastermind and Bush an unwitting accomplice, the instructions mandated acquittal.

The charge, taken as a whole, substantially covers Bush's requested instruction. *See United States v. Ortiz-Mendez*, 634 F.3d 837, 839 (5th Cir. 2011). The core of Bush's argument is that he should be found not guilty because Ruiz-Trevino could have done everything without Bush's knowledge. The jury instruction given by the district court said the same thing, only it used different words. It mandated acquittal if Bush "had no knowledge of the principal's criminal venture." Therefore, the district court did not abuse its discretion by refusing to give the requested jury instruction.

III.    *Deliberate Indifference Jury Instruction*

Bush argues that the district court erred by giving an instruction on deliberate indifference. While the district court has substantial latitude in deciding which instructions to give, it "may not instruct the jury on a charge that is not supported by the evidence." *United States v. Mendoza-Medina*, 346 F.3d 121, 132 (5th Cir. 2003) (quotation marks and citation omitted). Any error is reviewed under the harmless error doctrine. *Id.* When there is substantial evidence of actual knowledge, any error is harmless. *United States v. McElwee*, 646 F.3d 328, 341 (5th Cir. 2011).

The Government concedes that the district court erred by giving the deliberate indifference instruction because the trial evidence did not raise the required inference. We must determine whether that error was harmless.

Bush argues there was not substantial evidence of his knowledge of the marijuana. He claims that there was no direct evidence of his knowledge and there was only limited circumstantial evidence. It is worth noting this court has previously rejected the Government's assertion that these types of instructions are harmless as a matter of law. *See Mendoza-Medina*, 346 F.3d at 134. Therefore, we must consider whether there was substantial evidence.

No. 10-41185

The substantial evidence standard is met when the record contains a confession and circumstantial evidence. *Id.* at 134-35. Both are present here. The prosecution introduced evidence Bush admitted to the agents that he knew about the marijuana. He said, "I f\*\*ked up. If I knew there was going to be that much marijuana, I would have asked for more money." Bush had a contrary explanation of what those words meant, but the jury did not have to accept it. Circumstantial evidence of his knowledge exists due to the entries in his notebook regarding the security on the border and the need to maintain operational security. Moreover, when there is supportive evidence, knowledge may be inferred when the defendant is found to be transporting a large quantity of drugs. *See*, *e.g.*, *United States v. Garcia-Flores*, 246 F.3d 451, 455 (5th Cir. 2001) (holding that 300 pounds of marijuana was enough to infer knowledge). Bush was caught with over 4,000 pounds of marijuana hidden in his trailer.

There was substantial evidence that Bush had actual knowledge of the marijuana. The error was harmless.

IV.    *The Propriety of the Prosecutor's Closing Statement*

Bush argues that the prosecutor impermissibly injected his personal opinion into the Government's closing argument by describing Bush's story about the hotel as ridiculous, absurd, and insulting and by saying Bush lied on the stand like he lied to the DEA. Additionally, Bush alleges the prosecutor brought evidence from outside the record when he discussed the common practices of drug cartels and said that Bush worked for the drug cartels.

A prosecutor's closing remarks are reversible error when they "cast serious doubt on the correctness of the jury's verdict." *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005) (quotation marks and citation omitted). Among the factors this court considers are: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id.* (quotation

8

marks and citation omitted).  The burden is on the defendant and, even when the objection is timely, it is a substantial burden.  *Id.*  When an objection is not timely, this court reviews only for plain error.  *Id.*

Counsel has "wide latitude" in closing arguments.  *United States v. Thompson*, 482 F.3d 781, 785 (5th Cir. 2007) (quotation marks and citation omitted).  Even so, a prosecutor may only discuss "properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence."  *United States v. McCann*, 613 F.3d 486, 495 (5th Cir. 2010) (quotation marks and citation omitted).   When reviewing the propriety of the closing remarks, the court considers the comments in the context of the trial as a whole. *Thompson*, 482 F.3d at 785.

One of our decisions sets out the principles governing statements in which prosecutors mention their personal opinions.  "Except to the extent he bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses."  *United States v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979).  For this reason, it is proper for a prosecutor to refer to the defendant's dishonesty when such a characterization is reasonably seen as drawing conclusions from, and is actually supported by, the evidence. *See United States v. Tullos*, 868 F.2d 689, 696 (5th Cir. 1989).

Bush admitted on the stand that he lied to the DEA.  The fact that he lied was already in the record.  The prosecutor was permitted to call Bush a liar.

Bush further argues that the prosecutor gave his personal opinion when he described Bush's theory as ridiculous, absurd, and insulting.  Just as we give wide latitude during closing regarding the substance of the remarks, we permit "a bit of oratory and hyperbole."  *Thompson*, 482 F.3d at 786.  Prosecutors may use expressive language when emphasizing the weakness of a defendant's defense so long as it is clear to the jury that the conclusions he is making are based on the evidence.  *See Foy v. Donnelly*, 959 F.2d 1307, 1318 (5th Cir. 1992).

No. 10-41185

During the Government's closing argument, the prosecutor first reminded the jury that Bush's notebook contained an entry regarding the formulation of a believable cover story. He then summarized Bush's testimony and asserted that the jury should reach specific conclusions. This was all permissible. A prosecutor may argue that the jury should draw certain conclusions from the evidence. *United States v. Binker*, 795 F.2d 1218, 1224 (5th Cir. 1986). Moreover, a prosecutor does nothing wrong when he emphasizes apparent vulnerabilities in the defendant's arguments. *Foy*, 959 F.2d at 1318. That is what happened here. When reviewing the comments in the context of the entire closing statement, there was no error.

Last, Bush argues that the prosecutor erred by discussing the practices of the drug cartels. He asserts that the comments were not based on the evidence. The Government counters that the statements were grounded either in the evidence or common sense. Although some portions of the statements may not have been explicitly supported by the evidence, the prosecutor is allowed to appeal to common sense. *See United States v. Holmes*, 406 F.3d 337, 351 (5th Cir. 2005). Undoubtedly the jurors, as members of the general public, were familiar with the fact that drug smuggling is a violent business. For this reason, the statement was permissible.

V.     *The Possibility of Cumulative Error*

Finally, Bush argues that reversal may still be warranted under the cumulative error doctrine. Under that doctrine, an accumulation of otherwise non-reversible errors can yield a denial of a constitutional right to a fair trial. *United States v. Ned*, 637 F.3d 562, 571 (5th Cir. 2011). The doctrine is inapplicable here, where there was only one error.

AFFIRMED.

10