# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 11, 2013

No. 12-20486

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellant,

versus

CHRISTOPHER BRIAN POOLE,

Defendant–Appellee.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Consolidated with
No. 12-20485

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

CHRISTOPHER BRIAN POOLE,

Defendant–Appellant.

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before SMITH, DENNIS, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Christopher Poole was convicted of one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). After a hearing, the district court vacated the jury verdict and granted a new trial but denied Poole's motion to dismiss the indictment on double-jeopardy grounds. In separate, consolidated appeals, the government challenges the grant of a new trial (No. 12-20486), and Poole attacks the denial of his motion to dismiss the indictment (No. 12-20485).

Because the district court erred in ordering a new trial, we reverse that order and remand with instructions to reinstate the jury verdict and proceed to sentencing. We dismiss Poole's appeal as moot.

I.

Two deputy United States marshals conducted a sex-offender registry check at Poole's house to verify that Poole, a registered sex offender, was still residing there. Poole's girlfriend Alida Fuentes answered the door and gave the marshals written consent to search the house. The marshals uncovered, among other things, two pistols and a semi-automatic rifle; Fuentes told them that the three firearms belonged to Poole. Poole later confirmed during a custodial interview, after being given his *Miranda* warnings, that he owned and had control over the firearms. He described the weapons and their location in his house, explained where he bought them, how much he paid for them, how long he owned them, and why he had them.

No. 12-20486
No. 12-20485

Because he was a convicted felon, Poole was charged with one count of felony possession in violation of 18 U.S.C. § 922(g)(1). At his jury trial, he testified that he had lied to ATF officers about owning the firearms in question so that they would help him get out of jail.

The defense moved for a mistrial three times: (1) after Deputy Marshal Alfredo Lujan (who discovered Poole's gun) had testified on direct examination that one of his duties as a marshal is "to locate and apprehend local and federal fugitives"; (2) after the prosecutor had stated during closing arguments that it was not Poole's "first time in this situation"; and (3) after the prosecutor had asked the jury, also during closing arguments, "Are you going to believe a liar, ladies and gentlemen?" The court overruled the first motion for a mistrial but deferred ruling on the second two.

After the jury returned a guilty verdict, Poole orally renewed his motion, which he then reduced to writing with supporting argument and authorities. The written motion added a fourth objection in support of a mistrial, namely that during closing argument, the government had impermissibly referred to Poole's gun as an "assault rifle." At a hearing the next day, the court vacated the verdict and granted a new trial.

## II.

Federal Rule of Criminal Procedure 33(a) provides, in pertinent part: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). Where, as in Poole's case, a district court grants a motion for a new trial on the basis of allegedly improper comments by the government at trial, our review proceeds in two steps.

First, we must determine whether the challenged comments were actually

3

No. 12-20486
No. 12-20485

improper.[1] If not,[2] the court would have no discretion to order a new trial. If the prosecutor did make improper comments, we would review the decision to grant a new trial deferentially under the familiar "abuse-of-discretion" standard. At that step, we consider the magnitude of the statement's prejudice, the effect of any cautionary instruction, and the strength of the evidence of guilt.[3]

## III.

We turn to the propriety of the challenged comments by the prosecutor. Poole ultimately alleged four errors by the government in his various motions for a new trial (including his penultimate, written motion):

1. Asking Marshal Lujan what his duties were as a U.S. marshal in such a way that suggested Poole was a "fugitive;"

2. Describing Poole's firearm as an "assault rifle" during closing;[4]

3. Making inappropriate use of Poole's criminal history during closing;

---

[1] *See United States v. Wall*, 389 F.3d 457, 466, 474 (5th Cir. 2004) (reversing a grant of a Rule 33 motion because, *inter alia*, the prosecutor's comment on the defendant's failure to call witnesses did not, under the facts of that case, implicate the right not to testify).

[2] By "improper" we mean legally improper, *see, e.g.*, *United States v. Mendoza*, 522 F.3d 482, 491 (5th Cir. 2008) (holding a prosecutor's comment on the courtroom demeanor of a non-testifying defendant was "legally improper" because "[a] prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence").

[3] *E.g.*, *United States v. Turner*, 674 F.3d 420, 439–40 (5th Cir.) (affirming use of a curative instruction instead of granting a motion for mistrial), *cert. denied*, 133 S. Ct. 302 (2012); *United States v. Cruz-Padilla*, 227 F.3d 1064, 1068-69 (8th Cir. 2000) (affirming grant of new trial based on improper prosecutor's comments during closing).

[4] Poole expands on this second argument to challenge the prosecutor's questions related to the gun's stock and ammunition. But Poole's Rule 33 motion was not so broad: It challenged only the prosecutor's "assault rifle" comment at closing argument. Because "a district court does not have the authority to grant a motion for a new trial under Rule 33 on a basis not raised by the defendant," *United States v. Nguyen*, 507 F.3d 836, 839 (5th Cir. 2007), we limit our inquiry to the closing argument.

No. 12-20486
No. 12-20485

and

4.     Calling Poole a "liar" during closing.

A.

Poole's first motion for a mistrial came after direct examination of Lujan, who discovered the firearms in Poole's room.  The court (sensibly) forbade the government from explaining that Lujan was at Poole's residence because Poole was a registered sex offender, but it permitted testimony on Lujan's "background."  The offending portion of the direct examination went as follows:

[Prosecutor]: How are you employed?

[Marshal Lujan]: I'm a deputy U.S. Marshal.

[Prosecutor]: And how long have you been with the United States Marshals?

[Marshal Lujan]: I have been with the Marshal's service over nine years.

[Prosecutor]: Could you summarize your duties as a Marshal for the jury[?]

[Marshal Lujan]: One of my missions with the Marshal's service is to locate and apprehend local and federal fugitives.

At that point, defense counsel objected and moved for mistrial.  The court overruled the objection and denied the motion but gave an immediate curative instruction: "Ladies and gentlemen, Mr. Poole is not a fugitive.  He was not a fugitive at the time.  His fugitive assessment had nothing to do with this case.  So put it out of your mind."

The court then indicated that the prosecutor could not provide any more of Lujan's background, adding, "And now we are going to move to the facts of this

No. 12-20486
No. 12-20485

case." According to the government, had the prosecutor been able to continue exploring Lujan's background, the next questions would have been related to his previous employment as a police officer and U.S. Marine.

This episode does not suggest anything that should trigger a new trial. It was reasonable for the government to give the jury some context for the encounter by allowing Lujan to explain his duties as a marshal and to clarify that he was lawfully present at Poole's residence, without specifying that he was performing a sex-offender verification. Otherwise, the jury might be confused as to what a marshal does or might be suspicious of Lujan's reason for being there. For that reason, we routinely affirm decisions permitting police officers to explain their duties and give context for their arrival at a scene.[5] The government, at least ostensibly, was trying to provide Lujan's "background" (explicitly permitted by the *in limine* order) and to explain what a "U.S. Marshal" is to a lay jury, even as the government was not allowed to explain why Lujan was at Poole's house that day.

It is therefore not obvious that the government erred at all—much less committed error that would give us doubt as to the integrity of the verdict. Had the court said nothing to the jury after Poole's objection, the chain of inferences required to find unfair prejudice would be too attenuated to require a new trial.[6] Yet the court even derailed that speculation by immediately clarifying that Poole was and is not a fugitive.[7] And if Poole remained concerned that the jury might

---

[5] *See, e.g.*, *United States v. Parker*, 133 F.3d 322, 328 (5th Cir. 1998) (citing *United States v. Carrillo*, 20 F.3d 617, 619 (5th Cir. 1994)).

[6] *Cf. United States v. Goodwin*, 492 F.2d 1141, 1146–48 (5th Cir. 1974) (remanding for a new trial where, *inter alia*, the prosecutor described the defendant as a "fugitive" twice during closing).

[7] *See United States v. McMillan*, 600 F.3d 434, 452–53 (5th Cir. 2010) (affirming denial (continued...)

6

continue to believe that he was a fugitive despite the curative instruction, his counsel could have put the matter to rest on cross-examination.[8]

In short, there was no error in the direct examination of Lujan. If there was, it was an error so lacking in prejudice that it could not form the basis on which to set aside a jury verdict and, hence, no basis for us to affirm the order of a new trial.

## B.

Poole urges that the district court was within its discretion to grant the Rule 33 motion because during closing the prosecutor impermissibly referred to his semi-automatic rifle as an "assault rifle." This argument lacks any merit.

Poole's rifle was referred to as an "assault rifle" in almost every stage of the prosecution: in the government's opening statement ("That was the assault rifle, ladies and gentlemen);during the suppression proceedings ("she showed the Marshalls [sic] a large assault rifle in the closet"); on the government's exhibit list ("Photo of assault rifle in closet"); during direct examination of Lujan ("That is the same SKS assault rifle that we located within the closet"); and during the government's closing. Poole lodged no objection to that characterization of the rifle.

Poole's only objection was to the question "what defines that that is an assault rifle?" The objection was sustained, so the witness did not answer. Even here, the objection was not to calling Poole's rifle an "assault rifle" but to

---

[7] (...continued)
of motion for mistrial based on improper prosecutorial comment on defendant's silence where judge immediately gave a curative instruction); *Turner*, 674 F.3d at 439–40 (same).

[8] *Cf. Young v. Sirmons*, 551 F.3d 942, 952 (10th Cir. 2008) ("Although [the defendant] complains that this portion of the statement implied he was responsible for a third death, we note . . . that his trial counsel made no attempt to cross-examine [the witness] on this point.").

No. 12-20486
No. 12-20485

explaining the term "assault rifle."

The first time Poole raised issue with the characterization was in his sixth, written motion for a mistrial. In fact, he made a total of five motions for a mistrial during and immediately after the government's closing, and only in the final, written motion did he challenge the "assault rifle" moniker. He objected to the government's calling Poole a "liar" and to its statement referring to Poole's criminal history. He renewed those motions twice. But he stated no objection to the government's several references to Poole's "assault rifle" in the same closing argument.

That Poole was apparently uninterested with the description of his rifle betrays its insignificance. There was no error in the prosecutor's calling the weapon an "assault rifle" and surely no reason to suggest that the nomenclature created a manifest injustice requiring a new trial. Poole has provided no authority to the contrary.

### C.

During summation, the prosecutor stated:

> Special Agent Jovianne Marquez told you the agents warned [Poole] about his rights. They warned him that any statements he said could be used here in court. He knows this system. He has been convicted three times of a felony before. This is not his first time in this situation.

The defense objected and moved for a mistrial. The court then stated, "Convictions are useful only to establish the element of a crime, not that he is generally a crook and might be punished because of that fact"; the court deferred ruling on the mistrial motion.

Poole's convictions were relevant and admissible for three purposes: to establish his felon status, to impeach his trial testimony, and to challenge his

character for truthfulness.[9]  But the government could not use them as evidence of criminal propensity.[10]  The challenged portion of the government's closing statement was apparently a rebuttal to Poole's primary defense at trial: that he made up the story about owning the rifle in a desperate attempt to get out of jail. That is, the statement appears to have been intended to imply that Poole would not so casually admit to felony possession to a federal police officer after having been given *Miranda* warnings and after having already dealt with law enforcement.

That is not to say there was no inherent prejudice.  Any time past convictions are admitted for impeachment, there is a risk that a jury will ignore limiting instructions and consider the convictions as propensity evidence.  Yet, the scope of our review is limited to prejudice stemming from *this* objected-to closing argument.

And that marginal prejudice is likely non-existent.  The prior convictions were already entered into evidence by Poole, so the jury was already aware of them.[11]  Poole's convictions were repeatedly mentioned to the jury in the short trial, including in defense counsel's closing.

Moreover, the transcript of Poole's custodial interview, which was also

---

[9] *See United States v. Miller*, 673 F.3d 688, 696 (7th Cir. 2012) ("Because felon status is an element of the felon-in-possession charge, . . . . [t]he fact of his prior conviction of an unspecified felony was admissible for that purpose."); *United States v. DeLoach*, 34 F.3d 1001, 1004 (11th Cir. 1994) ("Two examples of the proper evidentiary use of [prior convictions] are: 1) to impeach trial testimony; and 2) to reflect on the witness' credibility.").

[10] *See United States v. West*, 22 F.3d 586, 593 (5th Cir. 1994) ("[T]he government may not introduce evidence of prior conviction[s] under the guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible.") (internal quotation marks omitted).

[11] Example:  "Q: Mr. Poole, let's get one thing out right away.  You are a felon, right? A: Yes, sir.  Q: And you have been convicted of something like three felonies; is that correct? A: Yes."

No. 12-20486
No. 12-20485

entered into evidence, supports the inference that he was familiar with the criminal-justice system: He asked the agents whether and when "the feds" were going to "pick up the case," told them, "I know how ya'll work," and stated his interest in entering into a deal that would "benefit[]" him. At trial, he admitted both that he was given *Miranda* warnings and that he was familiar with them.

Finally, any lingering prejudice—though there appears to be none—created by the prosecutor's closing argument was remedied by the instructions that "[w]hat the lawyers say is not evidence," *United States v. Duffaut*, 314 F.3d 203, 211 (5th Cir. 2002), "[c]onvictions are useful only to establish the element of a crime, not that he is generally a crook and might be punished because of that fact." The jury was repeatedly told about Poole's convictions, and there was already evidence manifesting his familiarity with the criminal-justice system. And the government was well within its right to suggest that the jury infer the implausibility of Poole's testimony based on that evidence. Even if there was error, the prejudice was surely not enough to set aside the verdict and award a new trial.[12]

### D.

During summation, the prosecutor stated:

> [Poole] was warned of his rights, ladies and gentlemen, and he chose to speak to those agents. He told those agents, as you read for yourself through the transcripts, where he bought those firearms. He described the firearms to the agents without the agents even prompting him. He told them how much he paid for the firearms.

---

[12] *See United States v. Logan*, 861 F.2d 859, 863–66 (5th Cir. 1988) (holding that district court abused its discretion by granting new trial on ground of ineffective assistance where record did not fairly support the conclusion that, but for the advice, the jury verdict would in reasonable probability have been any different); *United States v. Sanchez*, 969 F.2d 1409, 1415 (2d Cir. 1992) (holding that it was an abuse of discretion to award a new trial, even in the case of clear perjury, without a showing that jury might have acquitted otherwise).

No. 12-20486
No. 12-20485

He told them how long he had the firearms and why he had the firearms.

Now, today, ladies and gentlemen, he wants you to believe that he lied to those agents. Are you going to believe a liar, ladies and gentlemen?

The defense argues on appeal that the prosecutor acted improperly by interjecting her personal opinion of Poole's veracity and character into the decision-making process. In response, the government points out that it was the defense that first used the term during its opening statement[13] and later during direct examination of Poole.[14] In light of those references, the government frames the remark as a "straightforward comment on the evidence, not an improper assertion of the prosecutor's personal opinion."

The defense is correct that there is sometimes a distinction between commenting that a defendant lied on a particular occasion and calling him a liar.[15] One is an "inference drawn from specific evidence," the other "an attack on [the defendant]'s character." *Delgado*, 672 F.3d at 336. Where a defendant does not testify, and his character or veracity is otherwise not at issue, it is improper for the government to sully his character by calling him a liar. *See id.*

But the same is not true where the defendant elects to testify and, in so doing, puts his veracity at issue.[16] As long as "such a characterization is reason

---

[13] "[Poole] is going to tell you he lied to the agents."

[14] "[Prosecutor]: Did you lie to the ATF? [Poole]: Yes. I did."

[15] *See United States v. Delgado*, 672 F.3d 320, 336 (5th Cir. 2012) (en banc) (stating that "reciting the conclusion that the defendant lied on a particular occasion is not, as [defendant] contends, equivalent to calling the defendant a liar.").

[16] *See United States v. Bush*, 451 F. App'x 445, 451 (5th Cir. 2011) (holding that "[t]he prosecutor was permitted to call [the defendant] a liar" because he "admitted on the stand that he lied to the DEA"); *United States v. Loney*, 959 F.2d 1332, 1343 (5th Cir. 1992) (holding that it was "entirely appropriate" for the prosecutor to call the defendant a "liar" during closing
(continued...)

11

ably seen as drawing conclusions from, and is actually supported by, the evidence," *Bush*, 451 F. App'x at 451, the prosecutor does not commit error by characterizing the defendant as a liar. This principle must be especially true where the defendant's entire defense is that he lied to law enforcement.

The decision in *United States v. Anchondo-Sandoval*, 910 F.2d 1234 (5th Cir. 1990), which Poole cites for the opposite conclusion, is inapposite. There the prosecutor stated during closing: "I am going to tell you my feelings in this case —the defendant in this case is one of the most artful liars I have ever met." *Id.* at 1237. In *dictum*, we admonished the prosecutor against "interject[ing her] personal opinion of the defendant's veracity into the decision-making process." *Id.* at 1238. The situation here is different: The prosecutor did not share her personal view of Poole's veracity; she took his word for it.

Poole's reliance on *Delgado*, 672 F.3d at 336, is similarly misplaced. In that case, this court affirmed a conviction where the prosecutor stated in his closing statement that the defendant had lied. The defendant argued that "reciting the conclusion that the defendant lied on a particular occasion is . . . equivalent to calling the defendant a liar," which the court said would be an impermissible "attack on Delgado's character." *Id.*

The two principles alluded to in this *dictum* from *Delgado* are not helpful

---

[16] (...continued)
argument where defendant's testimony at trial was contradicted by his actions); *see also United States v. Moreland*, 622 F.3d 1147, 1161 (9th Cir. 2010) ("[T]he prosecution may refer to a defendant as a liar if it is commenting on the evidence and asking the jury to draw reasonable inferences."); *United States v. Andreas*, 216 F.3d 645, 671 (7th Cir. 2000); *United States v. Donato*, 99 F.3d 426, 432 (D.C. Cir. 1996); *United States v. Goodapple*, 958 F.2d 1402, 1409–10 (7th Cir. 1992) (explaining that "the government is allowed to comment on the credibility of a witness, including the defendant, as long as the comment reflects reasonable inferences from the evidence adduced at trial rather than personal opinion" and noting that "the prosecution may even characterize the defendant as a liar"); *United States v. Peterson*, 808 F.2d 969, 977 (2d Cir. 1987) ("Use of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory.").

to Poole. One is that a prosecutor could not (as the government did in *Anchondo-Sandoval*) provide her own personal opinion of a witness's veracity divorced from the evidence in the case as a sort of expert witness in closing. That maxim is not implicated here because the fact that Poole lied was indeed in evidence (and came from Poole himself). The second principle is that the government may not attack a defendant's character to prove up an offense, sometimes called the "propensity bar." In *Delgado*, the defendant's character was irrelevant because she did not testify. Here, by contrast, Poole was a witness in this case, so his character for truthfulness (*viz.*, whether he was a "liar") was at issue. *See* FED. R. EVID. 608. The government was well within its rights to suggest to the jury that Poole was a liar.

There was no error. In summary, "[t]he substantially appropriate nature of the prosecutor's comments, the repeated correction of any possible deficiencies, and the strong government case all lead to the conclusion that the district court abused its discretion in taking the rare step of ordering a new trial." *United States v. Glantz*, 810 F.2d 316, 324 (1st Cir. 1987).

IV.

Both the new-trial order and Poole's briefing suggest that it was a permissible exercise of discretion to set aside the verdict and order a new trial—not because of any inherently prejudicial character of the prosecutor's comments—but because of the prosecutor's manifest contemptuousness in violating the *in limine* orders (described by Poole as "prophylactic measure[s]") as a sort of punishment. To be sure, any overbreadth in the *in limine* order did not give the government license to ignore it. The government acted ill-advisedly, for example, by proceeding with a delicate line of inquiry when it questioned Lujan before first clearing it with the court. "The prosecutor's improper behavior offers a

reminder that attorneys should hew closely to the orders excluding evidence and seek clear permission when they are approaching those topics at a later point in trial." *United States v. Dugue*, 690 F.3d 636, 638 (5th Cir. 2012) (per curiam).

Nevertheless, a new trial is not a mechanism for punishing contempt, by a prosecutor or otherwise, but a way to avoid injustice generally and to avoid a jury verdict for which one has compromised confidence specifically. Consistent with this principle, courts have affirmed or ordered a new trial for verdicts against the weight of the evidence; for failure to disclose *Brady* material, but only if the evidence is material to guilt or punishment and only where the defendant did not already have access to the evidence,[17] for evidence otherwise newly discovered, but only if that evidence "would . . . probably have resulted in acquittal,"[18] and for failing to grant a separate trial for a co-defendant, but only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence."[19] More immediately analogous here is that courts have affirmed or ordered the grant of a new trial where a prosecutor has had *ex parte* communications with jurors,[20] but not if the court has taken care to ascertain from each juror a total lack of prejudice in the incident,[21] where a prosecutor knowingly uses false testimony, but only where the jury "might" have acquitted

---

[17] *E.g.*, *Rector v. Johnson*, 120 F.3d 551, 558–59 (5th Cir. 1997).

[18] *Wall*, 389 F.3d at 471–72 (emphasis added).

[19] *E.g., United States v. Tarango*, 396 F.3d 666, 672–73 (5th Cir. 2005).

[20] *E.g., United States v. Betner*, 489 F.2d 116, 118–19 (5th Cir. 1974).

[21] *E.g., United States v. Henderson*, 404 F.2d 832, 835 (9th Cir. 1968).

absent the perjury,[22] and where prosecutors make impermissible comments during their closing arguments, but not if the court instructed the jury that counsel's arguments were not evidence and where the weight of the evidence against the defendant satisfied that court that none of his substantial rights was prejudiced.[23]

Rule 33 caselaw cannot be understood except through the lens of avoiding the injustice of a compromised verdict. Counsel has brought to our attention no case—and we know of none—in which an appellate court affirmed the grant of a Rule 33 motion on grounds of prosecutorial misconduct unrelated to confidence in the jury verdict, merely as a way to punish contemptuous prosecutors.[24]

In No. 12-20486, the order granting a new trial is REVERSED, and that matter is REMANDED with instruction to reinstate the verdict and proceed to sentencing. In No. 12-20485, the appeal of the order denying the motion to dismiss the indictment is DISMISSED as moot.

---

[22] *E.g.*, *United States v. Stofsky*, 527 F.2d 237, 246 (2d Cir. 1975).

[23] *E.g.*, *United States v. Phillips*, 664 F.2d 971, 1030–31 (Former 5th Cir. Dec. 1981).

[24] If the lawyers here were in contempt, there are ways of punishing them short of resorting to a new trial. And even if those mechanisms are sometimes ineffective, *see* David Keenan et al., *The Myth of Prosecutorial Accountability After* Connick v. Thompson*: Why Existing Professional Responsibility Measures Cannot Protect Against Prosecutorial Misconduct*, 121 YALE L.J. ONLINE 203, 223–24 (2011), that fact would not give us license to make Rule 33 something it is not. A new trial is a remedy inapposite to the harm where the putative "wrong" has no effect on our confidence in the verdict or the fairness of the trial.