# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 29, 2022

Lyle W. Cayce
Clerk

———————

No. 22-30007

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellant*,

*versus*

JASON R. WILLIAMS; NICOLE E. BURDETT,

*Defendants—Appellees*,

CONSOLIDATED WITH

———————

No. 22-30008

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellant*,

*versus*

NICOLE E. BURDETT,

*Defendant—Appellee*.

No. 22-30007 c/w No. 22-30008

---

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CR-55 & No. 2:20-CR-139

---

Before SMITH, COSTA, and WILSON, *Circuit Judges*.

GREGG COSTA, *Circuit Judge*:

A federal grand jury indicted lawyer Jason Williams for lying on his taxes and failing to report large cash transactions to the IRS. In a lengthy pretrial order, the district court admitted some evidence, excluded other evidence, and deferred certain rulings until it had the benefit of the context that trial provides. For the rulings it did make, the court reserved the right to revisit those decisions at trial. Despite the possibility of reconsideration, the government appealed the pretrial exclusion of certain evidence of Williams's tax history from the years predating the charged conduct. We consider whether the district court abused its discretion in concluding that this evidence was improper "other act" evidence under Rule 404(b) and, alternatively, inadmissible under the Rule 403 balancing test.

I

The grand jury charged Williams and his law partner Nicole Burdett with eleven counts. The first was conspiracy. U.S.C. § 371. The indictment alleges that between 2011 and 2019, Williams and Burdett conspired to defraud the United States by (1) filing fraudulent tax returns and (2) failing to report cash payments of over $10,000. As part of their conspiracy, Williams and Burdett allegedly worked with a tax preparer to inflate Williams's form 1040 Schedule C business expenses on five years of returns.[1]

---

[1] A few months after Williams and Burdett were indicted, the government charged the tax preparer with fraud related to his own Schedules C. The tax preparer pleaded guilty to one count.

Those business expenses reduced Williams's taxes by $200,000. Williams and Burdett also asked the tax preparer to amend earlier returns from years predating the conspiracy to reduce his existing tax debt.

The remaining ten counts are an encore to the conspiracy count. Five counts allege that Williams and Burdett aided or assisted tax fraud for years 2013 through 2017. *See* 26 U.S.C. § 7206(2). Defendants allegedly "misclassified Williams's personal expenses as business expenses and provided this false information" to the tax preparer to include in Williams's Schedules C. The other five counts allege that Williams and Burdett failed to "file forms 8300 relating to cash received in trade or business," in violation of 31 U.S.C. § 5331.

Before trial was set to begin, the government filed a notice of intent to introduce "other acts" evidence. *See* FED. R. EVID. 404(b)(3). The notice sought to introduce testimony and documents about Williams's "handling of his income taxes prior to the tax years charged in the indictment." According to the government, the evidence showed that starting in 2002, Williams filed and paid his taxes late. His recurrent tardiness resulted in IRS debt and liens, some of which existed when the conspiracy began in 2011. The government also wanted to show that Williams "had conversations with the IRS about these tax issues." These tax issues, the government argued, showed Williams's intent to commit tax fraud.

After a hearing, the district court ruled on several evidentiary issues including the government's Rule 404(b) notice. The court first allowed the government to introduce limited evidence about Williams's tax history to the extent that it was necessary to explain how the conspiracy began—that is, to explain how Williams hired the tax preparer in 2011 to amend his prior returns by increasing business expenses, thus lowering his existing tax burden. It also allowed evidence about Williams's improperly deducting his

overdue tax payments as business expenses during the years for which the government charged him.

But the district court excluded the rest of Williams's tax history predating the conspiracy—including evidence of his late filings and payments and his related back-and-forth with the IRS—under Rules 404(b) and 403. It reasoned that the evidence is "classic propensity evidence," probative only of Williams's propensity to cheat the IRS, and thus barred by Rule 404(b)(1). Setting aside Rule 404(b), the district court then gave the government the benefit of the doubt, assuming that the evidence is "marginally probative of Williams's willfulness to commit tax fraud." The district court nevertheless excluded the evidence under Rule 403, concluding that the unfair prejudice, juror confusion, and delay that might result from introducing the evidence would substantially outweigh its probative value.

Three weeks before trial, the government appealed.

II

The government may seek interlocutory review of an order "excluding evidence" if "the United States Attorney certifies to the district court that the appeal is not taken for purposes of delay and that the evidence is a substantial proof of a fact material in the proceeding." 18 U.S.C. § 3731. This one-sided jurisdictional statute reflects the government's inability to appeal an evidentiary ruling either during trial or after an acquittal. *Id.* (not allowing such appeals if "made after the defendant has been put in jeopardy and before the verdict"); *see also Serfass v. United States*, 420 U.S. 377, 388 (1975) ("In the case of a jury trial, jeopardy attaches when a jury is empaneled and sworn."); *Kepner v. United States*, 195 U.S. 100, 129–30 (1904) (holding that the Double Jeopardy Clause prevents appeals from an acquittal). Pretrial review is usually the government's only option to appeal erroneous evidentiary rulings.

Despite our jurisdiction, it is awkward for an appellate court to consider run-of-the-mill pretrial evidentiary rulings that depend on the broader evidentiary canvas of a case. This lack of context is typically not a problem for the most common uses of section 3731: appeals of pretrial rulings suppressing evidence or statements, which typically involve self-contained issues such as whether reasonable suspicion supported a traffic stop. *See, e.g.*, *United States v. Wise*, 877 F.3d 209, 215 (5th Cir. 2017) (appeal of pretrial Fourth Amendment ruling); *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (appeal of pretrial *Miranda* ruling). In contrast, applications of many of the Federal Rules of Evidence, especially Rules 403 and 404(b), "are usually predicated on a background of interwoven fact patterns, and the facts set out in the record, either in the indictment or affidavits accompanying the motion, are often insufficient to permit an informed decision." Scott J. Shapiro, Note, *Reviewing the Unreviewable Judge: Federal Prosecution Appeals of Mid-Trial Evidentiary Rulings*, 99 Yale L.J. 905, 912 (1990) (proposing midtrial government appeals of evidentiary rulings).

Our pretrial review, which takes place without knowledge of the evidence or arguments on which the trial will turn, is consequently impaired. Cases take shape and color at trial, where lawyers argue, witnesses testify, and jurors listen, observe, and react. Trial developments could make evidence that seemed irrelevant or marginally probative at the outset instead appear crucial for one purpose or another—such as impeaching a witness or discrediting a defense theory. What better place to answer questions about probative value, prejudice, jury confusion, or delay than at trial? *See* Shapiro, *supra*, at 912 ("[T]he determination of prejudice may necessitate that the judge acquire a 'feel' for the case."). Indeed, the district court recognized the ephemeral nature of pretrial evidentiary rulings, adding to its order "the proviso that evidence at trial may change the complexion of what informs [its] rulings." *See also United States v. Decinces*, 808 F.3d 785, 789 (9th Cir. 2015)

(recognizing that pretrial evidentiary rulings "are by their very nature nonfinal").[2] The district court's qualified ruling on issues so heavily dependent on what happens at trial means that our pretrial review has a tentative flavor to it.

Mindful of these impediments to our pretrial review and the nonfinal nature of the ruling before us, we nonetheless must exercise the jurisdiction Congress has granted us. But given our more detached view of the case, we review a district court's exclusion of evidence for abuse of discretion. *United States v. Sharpe*, 193 F.3d 852, 867 (5th Cir. 1999). Trial court discretion is at its zenith in Rule 403 balancing, so such rulings are disturbed only for a "clear abuse of discretion." *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007).

A

Before deciding whether the exclusion of evidence was proper, we must determine what evidence the district court's order actually excluded. Although only the district court can definitively resolve the order's ambiguities, we read the order to allow evidence showing that Williams had lingering tax debt and liens when the conspiracy began and asked the tax preparer to amend the earlier returns to reduce his tax liability. We also see nothing in the order that excludes evidence of how much tax debt Williams had when he hired the tax preparer. In fact, the district court expressly allowed evidence of how Williams deducted his late tax debt payments as

---

[2] Section 3731 is anomalous in allowing appeals of nonfinal rulings. *See Decinces*, 808 F.3d at 790 (recognizing that section 3731 allows appeals of orders excluding evidence even though they are not final). Most appeals lie only after a final judgment has issued, *see* 28 U.S.C. § 1291, and even interlocutory appeals typically require finality as to the discrete issue being appealed, *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949) (observing that interlocutory appeals are appropriate when the ruling has "a final and irreparable effect on the rights of the parties").

business expenses in the charged years. What the district court did exclude were granular details of Williams's late filings, late payments, liens, enforcement actions, and communications with the IRS that were resolved before he met the tax preparer. Williams agrees with our interpretation of the district court's order, conceding that the government can introduce evidence of "why [the tax preparer] was hired, when he was hired, the reasons that Mr. Williams went to see him."

Oddly, the government refuses to accept the concession. It argues that the district court's order makes it "impossible" to explain why Williams hired the tax preparer to amend his old tax returns. But the district court agreed with the government—it ruled that "insofar as the government seeks to introduce evidence concerning the genesis of the alleged conspiracy," including how and why Williams hired the tax preparer, "such evidence is admissible intrinsic evidence." It thus allowed the evidence that the government needs to provide "the immediate context of events in time and place." *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010) (quotation omitted). The government's reluctance to accept its win is puzzling.[3]

---

[3] A proper reading of the ruling also alleviates the government's concerns that the district court excluded evidence intrinsic to the charged offenses and thus not subject to the restrictions of Rule 404(b). As we have said, evidence of other acts is intrinsic when "it is inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the 'other act' was a necessary preliminary step toward the completion of the charged crime." *United States v. Crawley*, 533 F.3d 349, 354 (5th Cir. 2008). The district court's order allowed all the evidence that the government contends is intrinsic—"namely, evidence of Williams's then-current tax liabilities from tax years 2002–2008, including the associated liens."

In contrast, the excluded evidence involves conduct that is too dissimilar and distant in time from the charged offenses to be intrinsic. *Compare United States v. Heard*, 709 F.3d 413, 430 (5th Cir. 2013) (holding that evidence of bankruptcy fraud was extrinsic to employment tax fraud because no evidence linked the two), *with United States v. Watkins*,

B

We turn, then, to whether the district court abused its discretion by excluding the more granular details of Williams's tax history. Rule 404(b) prohibits using evidence of "any other crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). It does, however, allow using other-act evidence for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). Even if the evidence clears the Rule 404(b) admissibility hurdle, it is still subject to Rule 403. That rule excludes evidence when "its probative value [for a permissible use] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (en banc) (outlining the two-step test involving Rules 404(b) and 403).

Williams's tax history may well have permissible uses under Rule 404(b), like proving his willful intent or knowledge of tax obligations. *See Heard*, 709 F.3d at 429–30 (holding that evidence of bankruptcy fraud was admissible to prove intent in an employment tax fraud case); *United States v. Boyd*, 773 F.3d 637, 643 (5th Cir. 2014) (holding that evidence of late filings and warning notices from the IRS was admissible to prove defendant's willfulness in evading taxes and knowledge of tax system); *see also United States v. Daraio*, 445 F.3d 253, 264 (3d Cir. 2006) (allowing history of tax noncompliance in a tax evasion case); *United States v. Bok*, 156 F.3d 157, 165–

---

591 F.3d 780, 784–85 (5th Cir. 2009) (admitting intrinsic evidence of drug runs from a few months earlier in a drug conspiracy case). As the government concedes, the district court did not err in deeming that evidence extrinsic.

66 (2d Cir. 1998) (allowing evidence of failure to file returns in a prosecution for lying on tax forms because it was "indicative of an intent to evade the tax system"). That is especially so because Williams plans to assert that he relied in good faith on his tax preparer. *See Boyd*, 773 F.3d at 643 (allowing other-act evidence to disprove a good-faith defense).

But even assuming some permissible Rule 404(b) uses, the district court did not clearly abuse its discretion in alternatively excluding the evidence under Rule 403. The probative value of Williams's tax history for any permissible use does not seem high. Other acts are more probative of intent when they are similar to the charged acts. *See Beechum*, 582 F.2d at 913; *United States v. Farr*, 701 F.3d 1274, 1281 (10th Cir. 2012) (holding that prior IRS penalties were admissible because they were "virtually identical" to the ones in the case). Paying taxes late is not the same as lying on tax forms. And although Williams's tax delinquencies and communications with the IRS might show his familiarity with how taxes work in general, they say little about his knowledge of Schedule C business expenses.

In contrast, the district court identified substantial risks from admitting Williams's tax history. Admitting the evidence gives the jury the chance to decide the case on an improper basis: Williams is guilty because he is the type of person who doesn't follow the tax laws. This concern is "particularly great" when, as here, the other acts have gone unpunished. *Beechum*, 582 F.2d at 914. On top of this, risks of confusion and delay abound. The exhibits the government seeks to introduce span close to a decade, raising the strong possibility of minitrials over late filings and civil IRS disputes that might distract the jury from the charged conduct. *See Harpring v. Continental Oil Co.*, 628 F.2d 406, 410 (5th Cir. Unit A 1980) (affirming the exclusion of evidence because it would have involved "trying another lawsuit within the existing lawsuit"). The district court did not commit a clear abuse of discretion in predicting that risks of undue prejudice,

confusion, and waste of time would substantially outweigh the other acts' probative value.

The government seeks a remand of the district court's Rule 403 balancing, arguing that it was tainted because the district court did not recognize all possible Rule 404(b) uses of the other-act evidence. True, the district court did not acknowledge the potentially permissible use of showing Williams's knowledge of the tax code.[4] Still, the district court conducted its Rule 403 balancing after assuming that the evidence was probative of Williams's willfulness to commit tax fraud, which was the use that the government pressed most zealously below. And the outcome of the district court's balancing flows largely from its assessment of the other side of the equation—the weighty concerns about unfair prejudice, juror confusion, and delay. This is not one of the rare cases in which a district court clearly abused its "especially high" Rule 403 discretion. *United States v. Meza*, 701 F.3d 411, 429 (5th Cir. 2012).[5]

---

[4] The district court did not address motive or plan-and-preparation either. But a review of the government's Rule 404(b) notice, its briefing at the district court, and the evidentiary hearing transcript, indicates that the motive and plan-and-preparation arguments were not adequately raised at the district court. Similarly, the government's only mention of Williams's lying to the IRS that Hurricane Katrina destroyed his business records was a fleeting reference during the evidentiary hearing. The Rule 404(b) notice itself did not mention that evidence. One can hardly fault the district court for not addressing arguments that the government did not press.

[5] The government fails to cite a single Fifth Circuit case reversing a Rule 403 determination. Our thorough search of published Fifth Circuit criminal cases revealed only two from the last two decades reversing a Rule 403 balancing. In one, the court vacated a criminal conviction because the district court excluded evidence offered by the defendant that was highly probative and not very prejudicial. *United States v. Gluk*, 831 F.3d 608, 616 (5th Cir. 2016). In the other, the court vacated a criminal conviction because the district court admitted inflammatory evidence of a prior conviction. *United States v. Jackson*, 339 F.3d 349, 357–58 (5th Cir. 2003). This dearth of cases further confirms that the district court did not abuse its discretion.

No. 22-30007 c/w No. 22-30008

The bigger reason not to remand for Rule 403 rebalancing is one we have already noted: The district court ruling is subject to modification. Because of the difficulties of making Rule 404(b) and 403 assessments in the vacuum of pretrial review, we double down on the district court's caveat. Nothing we have said limits the district court's ability to reassess the challenged ruling (or others that were part of its lengthy order and not subject to appeal), given the protean and illuminating nature of a trial. Our holding is only that the district court did not clearly abuse its discretion in excluding the evidence based on what it knew at that time.[6]

\* \* \*

We AFFIRM.  As the trial has been on hold pending this appeal, the mandate shall issue forthwith.

---

[6] To avoid confusion on part of the reader, we note that Judge Martin Feldman, who excluded the evidence, died while his ruling was on appeal.  Nothing in this opinion is an indication of what rulings the new judge should make as the case proceeds.