# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-41073

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JORGE ANTONIO LOPEZ,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:16-CR-1417-1

Before HAYNES, HO, and DUNCAN, Circuit Judges.

PER CURIAM:*

## I. Background

Jorge Antonio Lopez pleaded guilty, without the benefit of a plea agreement, to one count of conspiracy to possess with intent to distribute 50 kilograms or more of marijuana and one count of possession with intent to distribute 50 kilograms or more of marijuana.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-41073

According to the presentence report (PSR), on November 28, 2016, law enforcement officers "received information that several individuals were in possession of a usable amount of marijuana at 2502 Davis Avenue," which was a single-story house rented by Lopez. The next day, officers executed a search warrant at that address. Officers found three plastic baggies containing cocaine, one plastic baggie containing 2.3 ounces of marijuana, four Xanax pills, a digital scale, a .22 caliber Mossberg 715T rifle, two boxes of 9-millimeter ammunition, and one box of .357 caliber ammunition in a bedroom. They also found 22 bundles of marijuana wrapped in clear plastic in a laundry room and 18 bundles of marijuana inside a vehicle parked on the property. The gross weight of marijuana was 420 kilograms and the net weight of the marijuana 398.4 kilograms. One of the officer's observed that the house was "furnished, had a television, clothing, and grooming products."

In a post-arrest interview, Lopez told officers that the marijuana had been "dropped off" at his house earlier in the morning on November 29, 2016, by a person he identified as "Blackie." He expected to be paid $ 3,000 to $ 4,000 "to care for the bundles." Lopez further explained that Agustin Gutierrez "was just picking up some marijuana [he] had 'scratched off' one of the bundles." He said that he had planned to give the marijuana to Gutierrez, a friend he had known since high school. However, Gutierrez told officers that Lopez had called him and asked whether he wanted to buy a pound of marijuana.

Based on the foregoing facts, the PSR included a two-level enhancement pursuant to § 2D1.1(b)(12) because Lopez maintained a premises for the purpose of distributing a controlled substance. Lopez's total offense level of 25, coupled with a criminal history category of I, resulted in a guidelines range of 57 to 71 months of imprisonment. Lopez filed written objections to the PSR, challenging the § 2D1.1(b)(12) enhancement. He argued that the primary purpose of the premises was to provide him and his girlfriend a place to live.

No. 17-41073

At sentencing, Lopez renewed his objection to the § 2D1.1(b)(12) enhancement, asserting that the enhancement was not warranted because he had been living in the premises for close to four years and the offense was an isolated incident. In overruling Lopez's objection, the district court noted that, "there's a reason that drug dealers have guns . . . [i]t's to protect their stash." The district court continued, "[T]here's no question that [Lopez] was selling drugs out of []his residence.  That's why he had the scale and that's why the drugs were found there." In addition, the district court stated,

> [Lopez] may have been living there, but this house was clearly being used to stash the drugs, to store the drugs, to sell the drugs, as evidenced by the paraphernalia, the digital scale, and the amount of narcotics and so, I - - there's no indication you were making the drugs so it's not for the purpose of manufacturing, but there is the "or distributing a controlled substance." And so, the Court finds that clearly it was being maintained to distribute a controlled substance.

After adopting the PSR without change, the district court varied below the guidelines range and sentenced Lopez to concurrent terms of 48 months of imprisonment and three years of supervised release. Lopez filed a timely notice of appeal.

## II. Discussion

On appeal, Lopez challenges the district court's application of the two-level enhancement under § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing a controlled substance. Lopez argues that the evidence established only that he was *"using*, rather than *primarily* using, the premises for drug activities." In support, he maintains that he lived in the premises for nearly four years, the premises contained home furnishing and personal belongings, and he used the premises only once to store drugs.  According to Lopez, the Government cannot show that the district court's error was harmless and, therefore, the case should be remanded for resentencing.

3

No. 17-41073

This court reviews the district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Romans*, 823 F.3d 299, 317 (5th Cir. 2016). "A district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015). A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court "on the entire evidence . . . [is] left with a definite and firm conviction that a mistake has been committed." *United States v. Marquez*, 685 F.3d 501, 508 (5th Cir. 2012) (internal quotation marks and citation omitted). "A factual finding is not clearly erroneous if it is plausible, considering the record as a whole." *United States v. Ruiz*, 621 F.3d 390, 396 (5th Cir. 2010).

Section 2D1.1(b)(12) provides for a two-level enhancement if the defendant "maintained a premises for the purpose of manufacturing or distributing a controlled substance." § 2D1.1(b)(12). For the enhancement to apply, the premises need not be used exclusively for the manufacturing or distribution of a controlled substance, but such drug activity must be a primary or principal use, rather than merely an incidental or collateral use. § 2D1.1, comment. (n.17). In considering whether such drug activity is a primary or principal use of the premises, a court should consider how often the premises was used for the drug activity and how often it was used for lawful purposes. § 2D1.1, comment. (n.17). It is clear that there can be more than one primary use of a building for purposes of evaluating the enhancement.

In *United States v. Benitez*, 809 F.3d 243, 250 (5th Cir. 2015), this court upheld the application of the enhancement where the defendant "received drug deliveries at the apartment, and the search of the apartment revealed an air-breathing mask, a cutting agent, and a metal strainer (in addition to the drugs themselves)." In *United States v. Carrillo*, 689 F. App'x 334, 335 (5th Cir. 2017), a subsequent unpublished decision, this court rejected the defendant's

4

argument that the primary purpose of the premises was to provide him and his family a place to live. This court noted that "a defendant's additional use of a premises as a family home is not necessarily fatal to application of § 2D1.1(b)(12), so long as facts in the record support that storage of the controlled substance was 'one of the defendant's primary or principal uses for the premises.'" *Id.* (citing § 2D1.1(b)(12)). In affirming the district court's application of the enhancement, this court relied on "the large quantity of methamphetamine stored in [the defendant's] garage, as well as the over $12,000 in drug proceeds also stored there and various other containers with methamphetamine residue" and the fact that the defendant used his "residence as a premises for drug distribution and likely for storage, and he conducted drug transactions in the parking lot of that residence on multiple occasions." *Id.* at 335-36.

However, in *United States v. Rodriguez*, 707 F. App'x 224, 227 (5th Cir. 2017, *cert. denied*, 138 S. Ct. 1572 (2018), this court found it to be a "close case as to whether the district court committed clear error" in applying the enhancement where "[t]he evidence in the PSR only establish[ed] that drugs intended for distribution were present in the [defendant's] home once – when the 2.2 kilograms that served as the basis for his co-conspirators' arrest were briefly stored there." This court was skeptical that the record supported the inference that the defendant "had previously stored drugs on site" even though the defendant admitted that 2.2 kilograms of cocaine had been stored in his home at some point; a baggie of cocaine, a firearm and drug proceeds were found in his home; and the defendant was a repeat drug dealer. *Id.* at 225-28. This court ultimately decided not to resolve the issue because any error in applying the enhancement was harmless. *Id.* at. 227-29.

The facts of the instant case fall somewhere in between *Benitez* and *Carrillo* on the one hand, and *Rodriguez* on the other. The fact that Lopez lived

in the house and it was filled with normal home goods does not defeat the determination that storing and distributing drugs was a primary use of the premises. "[T]he evidentiary bar for 'primary or principal use' has not been set high." *Rodriguez*, 707 F. App'x at 227. The PSR reflects that the drugs intended for distribution were stored in Lopez's residence on a single occasion. Yet the Government does not concede this was "a single, isolated, or one-time occurrence," and the fact "[t]hat narcotics were only once found in the residence does not mean they were only once stored in or trafficked from said residence."

The Government argues, and we agree, that the district court could plausibly conclude that drug distribution was a primary purpose of Lopez's residence based on the paraphernalia, the digital scale, and the amount of drugs found in various parts of the house and on the property. In making its determination, the district court considered the PSR and the three plastic baggies containing cocaine, a plastic baggie containing 2.3 ounces of marijuana, four Xanax pills, a digital scale, .22 caliber Mossberg 715T rifle, two boxes of 9-millimeter ammunition, and box of .357 caliber ammunition found in a bedroom; the 22 bundles of marijuana found in the laundry room; the 18 bundles of marijuana found inside a vehicle parked on the property; and Lopez's "multiple controlled substance violations." The district court made credibility determinations as to Lopez's claims, concluding, "[T]here's a reason that drug dealers have guns…It's to protect their stash, and there's no question that he was selling drugs out of this residence. That's why he had the scale and that's why the drugs were found there."

It is a close factual question whether the record supports applying the two-level enhancement under § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing a controlled substance. But in light of the record as a whole, we are not "left with a definite and firm conviction that a mistake has

No. 17-41073

been committed." *Marquez*, 685 F.3d at 508. Accordingly, the judgment of the district court is AFFIRMED.