# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 6, 2020

Lyle W. Cayce
Clerk

No. 19-51094

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

DAVID KING,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:19-CR-134-1

Before DENNIS, HIGGINSON, and WILLETT, *Circuit Judges*.
STEPHEN A. HIGGINSON, *Circuit Judge*:

Appellant David King pleaded guilty to a single count indictment charging him with production of child pornography in violation of 18 U.S.C. § 2251(a). The district court sentenced him to 360 months' imprisonment followed by 10 years of supervised release. On appeal, King raises four issues in challenging his conviction and sentence. We AFFIRM.

No. 19-51094

I

As part of his guilty plea, King signed a factual basis for the plea, admitting that the Government could prove the following facts.

On May 10, 2019, a mother reported to the Ector County Sheriff's Office that King had had sexual contact with her child. King was the pastor of the victim's church. The mother had permitted her minor child to visit King at his home on various occasions between June 2017 and May 2018. Sometime in 2019, the child made an "outcry" to his mother, and the mother stopped the child's visits with King. Soon thereafter, the mother began intercepting inappropriate letters from King that were addressed to the child. In one letter, King told the child that his love for him was a "Godly love" and that his mother was the devil for taking the child away from him. King also told the child that the child could come live with him once the child turned 18.

Investigators interviewed the child. The child told them that he would shower at King's house and that King would not provide towels within reach of the child, which required the child to call King into the bathroom to give him a towel.  King would them remove the child from the shower and dry him off with the towel, which made the child feel "uncomfortable" and "weird" since the child knew how to dry himself. The child also said that before attending church on Sundays, King would take pictures of the child in his "church suit." When asked what a "church suit" looked like, the child said that he did not remember and became irritable and uncooperative, which led to the termination of the interview.

After the child's interview, an agent with the Texas Department of Public Safety interviewed King. King admitted that he had sexual contact with the child. He also admitted that he had sexual encounters with two additional children between the ages of 10 and 12, during which he became

sexually aroused. King admitted that he had viewed between 24,000 and 25,000 pictures of child pornography on his laptop computer and on his personal cell phone.

Investigators executed a search warrant on King's home where several electronic devices and media storage devices were seized. An additional search warrant was obtained for King's Samsung cell phone and a flash drive. The flash drive contained approximately 20 separate files, which consisted of multiple, sexually explicit images of children ranging in age from 2 to 17. One of the files was titled with the complaining child's name and consisted of multiple images of the child with his penis and anus exposed in a sexual manner. King's Samsung cell phone, which was manufactured outside the State of Texas, also contained multiple, sexually explicit images of children. Some of the pictures of the complaining child that were stored on King's cell phone were also found on King's flash drive.

King admitted that he "posed minors engaged in sexually explicit conduct and produced sexually explicit images of those minors using his cell phone, which traveled in interstate commerce."

After pleading guilty, King faced sentencing. A probation officer compiled a Presentence Investigation Report ("PSR"). In calculating King's offense level under the Guidelines, the PSR applied several enhancements and a reduction for acceptance of responsibility. Three of the applied enhancements are relevant here. First, King received a two-level enhancement because the offense involved the "commission of a sexual act or sexual contact." U.S.S.G. § 2G2.1(b)(2)(A). Second, King received a two-level enhancement because he "knowingly engaged in distribution." U.S.S.G. § 2G2.1(b)(3). Third, he received a two-level enhancement because the offense involved the use of a computer. U.S.S.G. § 2G2.1(b)(6)(B). After tabulating all of the enhancements and reductions, King's total offense level

amounted to 46. But because King's was one of those "rare cases" where the calculated offense level exceeded 43, his total offense level was treated as 43 for the purposes of calculating his Guidelines range. U.S.S.G. ch. 5, cmt. n.2.

With a total offense level of 43 and a criminal history category of I, King faced a Guidelines range of life imprisonment. However, because the statutory maximum sentence for a violation of 18 U.S.C. § 2251(a) is 360 months' imprisonment, King's Guidelines sentence was set to 360 months. U.S.S.G. § 5G1.1(a). The district court sentenced King to 360 months' imprisonment, followed by 10 years supervised release. King filed a timely notice of appeal.

## II

King raises four issues on appeal. Because King did not object to these alleged errors, we review for plain error. *See United States v. Trejo*, 610 F.3d 308, 318–19 (5th Cir. 2010).  To establish plain error, a defendant must show a forfeited error that is clear or obvious and that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009).  In general, to establish that his substantial rights were affected, a defendant must demonstrate that the error "affected the outcome of the district court proceedings." *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). If he makes such a showing, this court has the discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Puckett*, 556 U.S. at 135.  When reviewing for plain error, this "court may consult the whole record when considering the effect of any error on substantial rights." *United States v. Vonn*, 535 U.S. 55, 59 (2002).

## III

King argues (A) that the magistrate judge committed a Rule 11(b)(1)(M) error during the plea colloquy; (B) that there was insufficient evidence to establish the jurisdictional hook of § 2251(a), i.e., that

No. 19-51094

"materials" used in the production of child pornography were moved in interstate commerce; (C) that the district court erroneously applied three sentencing enhancements; and (D) that § 2251(a) exceeds Congress's power to regulate interstate commerce. We take each issue in turn.

A

King first argues that the magistrate judge failed to properly advise him about the consequences of his guilty plea. Federal Rule of Criminal Procedure 11(b)(1)(M) requires that, before a district court may accept the defendant's guilty plea, the court must inform the defendant of—and determine that he understands—the court's obligation to calculate the applicable Guidelines range and to consider that range, possible departures under the Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a). The purpose of this rule is to ensure that the defendant "understands the nature of the charge against him and whether he is aware of the consequences of his plea." *McCarthy v. United States*, 394 U.S. 459, 464 (1969).

King argues that the magistrate judge committed a Rule 11(b)(1)(M) error during the plea colloquy when the magistrate judge said that the Guidelines were advisory and that the Guidelines might recommend against probation. King claims that these statements confused him because they implied that King's sentencing range might call for a probation sentence, despite the mandatory 15-year minimum sentence that is imposed by statute. He also asserts that the magistrate judge's representations were misleading to "a lay person" like himself because they suggested that the district court was not required to calculate a Guidelines range before considering a departure from that range.

Rule 11 does not require the judge to use talismanic phrases or engage in rote recitation. *United States v. Bachynsky*, 949 F.2d 722, 726 (5th Cir.

No. 19-51094

1991). Moreover, although "the Guidelines should be the starting point and the initial benchmark" at sentencing, *Gall v. United States*, 552 U.S. 38, 49 (2007), Rule 11(b)(1)(M) does not require the district court to inform the defendant that the court will first consider the Guidelines range before it considers departures under the Guidelines and the sentencing factors under 18 U.S.C. § 3353(a). *See* Fed. R. Crim. P. 11(b)(1)(M).

Here, the magistrate judge confirmed that King understood that he faced a mandatory minimum sentence of 15 years in prison and a maximum sentence of 30 years in prison. The magistrate judge then told King that "[t]he district [court] judge w[ould] impose a sentence after considering [the] [G]uidelines," and that the nature and circumstances of the offense, King's conduct, and his criminal history were factors that would be considered. The magistrate judge added that the Guidelines "are merely advisory" and that the district court could sentence him to "any reasonable term as long as it is within that statutory range" (about which King had just been advised), and that "the sentencing guidelines may recommend against probation in [his] case." King, with counsel present, said that he understood all of these statements.

None of this plea colloquy amounts to error, let alone plain error. An examination of the whole record shows that King was fully aware of the consequences of his plea. *See Vonn*, 535 U.S. at 59. Importantly, he acknowledged that he understood that he faced a mandatory 15-year minimum sentence and up to a 30-year maximum sentence. *See United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990) (holding that a defendant is aware of the consequences of his plea for sentencing purposes and the plea is voluntary as long as he understands the length of time he might possibly receive). Rule 11 proceedings do not require perfection; they require that a defendant be properly informed so that he may knowingly and voluntarily enter his plea. *See Dominguez Benitez*, 542 U.S. at 83 n.9 ("[J]ust as there are

No. 19-51094

many fair trials but few perfect ones, so flaws are also to be expected in Rule 11 proceedings." (quoting *United States v. Raineri*, 42 F.3d 36, 45 (1st Cir. 1994))). The district court met that requirement here.

B

King next argues that the factual basis of his plea did not establish sufficient evidence to satisfy the jurisdictional hook of 18 U.S.C. § 2251(a) because he asserts that the Government did not prove that "materials" used in the production of child pornography were moved in interstate commerce. King requests de novo review, but he did not object to the sufficiency of the factual basis below. Accordingly, we review for plain error. *See United States v. Bailey*, 924 F.3d 1289, 1290 (5th Cir.), *cert. denied*, 140 S. Ct. 411 (2019).

To establish § 2251(a)'s jurisdictional hook and convict King, the Government was required to prove, among other things, that the images of child pornography at issue were "produced or transmitted using materials" that were "mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2251(a).

King argues that the Government presented no evidence that King's cell phone or his flash drive, on both of which King stored the child complainant's nude images, was manufactured outside the State of Texas. But the factual basis for the plea, which King signed and affirmed was correct, states that King's Samsung cell phone "was manufactured outside the State of Texas" and had "traveled in interstate commerce." Those facts provide a sufficient factual basis to satisfy the jurisdictional hook of § 2251(a) and thus support King's conviction. *See United States v. Looney*, 606 F. App'x 744, 747 (5th Cir. 2015) (unpublished opinion) (holding that a camera used to produce pornography that was shipped in interstate commerce was sufficient to

support a conviction under § 2251(a)).[1] We thus reject King's second challenge.

## C

King next argues that the district court erroneously applied the three sentencing enhancements identified above, which we refer to as the "sexual contact," "distribution," and "use of a computer" enhancements. U.S.S.G. § 2G2.1(b)(2)(A) ("sexual contact"); § 2G2.1(b)(3) ("distribution"); § 2G2.1(b)(6)(B) ("use of a computer"). Each is a two-level enhancement. Because King did not object to the Guidelines calculations or his sentence below, we review this claim for plain error. *United States v. Benitez*, 809 F.3d 243, 248-49 (5th Cir. 2015).

When a court sentences a defendant under an "incorrect, higher Guidelines range" and "the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346-47 (2016). Conversely, where a sentencing court makes an error in calculating the Guidelines range that does *not* have an effect on the ultimate Guidelines range that is applied, the error will be harmless unless the defendant can show that the error somehow affected the ultimate sentence that was imposed. *See United States v. Nimerfroh*, 716 F. App'x 311, 316 (5th Cir. 2018) (unpublished opinion) ("[A]ny error by the district court was harmless because Nimerfroh would have received the same guidelines range . . . even without the [erroneously applied] enhancement."); *see also*

---

[1] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5th Cir. R. 47.5.4).

No. 19-51094

*United States v. Brown*, 843 F.3d 74, 82 (2d Cir. 2016) ("An error in Guidelines calculation is harmless if correcting the error would result in no change to the Guidelines offense level and sentencing range." (quoting *United States v. Cramer*, 777 F.3d 597, 603 (2d Cir. 2015)).

That latter standard applies here. After the district court applied all of the enhancements and the reductions, King's total offense level was 46. But because that level was off the charts, so to speak, the district court treated King's total offense level as 43 for purposes of calculating his Guidelines range. U.S.S.G. ch. 5, cmt. n.2. Given King's criminal history, the recommended Guidelines range for a total offense level of 43 is life imprisonment. But because the statutory maximum sentence for a violation of § 2251(a) is 360 months, King's Guidelines sentence was set to 360 months. U.S.S.G. § 5G1.1(a).

What this means is that in order to show plain error, King must show that the district court committed clear or obvious error in applying each of the three relevant sentence enhancements.[2] If only one enhancement was applied in error, then King's total offense level would drop from 46 to 44 and would still be treated as 43. If two enhancements were applied in error, then his total offense level would drop to 42. A total offense level of 42 sets a sentence range of 360 months to life imprisonment. U.S.S.G. ch. 5, pt. A. But because the statutory maximum sentence here is 360 months, the effective Guidelines sentence would remain 360 months, just as it was originally. Only

---

[2] The Government expressly makes this point in its response brief, but King does not address the issue in his reply. In his principal brief, King only argues that subtracting *all three enhancements* would lead to the application of a lower Guidelines range, thus affecting his substantial rights. He never addresses the alternative scenario where only some of the enhancements were applied in error.

if all three enhancements were applied in error would the total offense level drop to 40 and a new, lower range would apply. *Id.*

We start with the "sexual contact" enhancement. U.S.S.G. § 2G2.1(b)(2)(A) provides a two-level increase when "the offense involved . . . the commission of a sexual act or sexual contact." For purposes of that section, "sexual contact" is defined as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3); *see also* U.S.S.G. § 2G2.1 cmt. n.2.

There is no dispute that King came into sexual contact with the complaining child. As described in the PSR, King towel-dried the child after showers and baths on more than 100 occasions, which King admitted gave him an erection. The child also sat in King's lap over 400 times, which King admitted gave him an erection. And King admitted in his interview with the state investigator to having "sexual contact" with the child.

There is also no dispute that King produced child pornography. As described above, sexually explicit images of the complaining child were found on King's cell phone and flash drive, and King admitted that he "posed minors engaged in sexually explicit conduct and produced sexually explicit images of those minors using his cell phone." And while King asserts that there is no evidence to support that his taking photos of the child in his "church suit" constituted child pornography, we think it is a reasonable inference to conclude that the "church suit" involved nudity, given the context in which it is discussed and the child's upset reaction when pressed to describe what his "church suit" looked like.

What King does dispute is the connection between these two sets of undisputed facts. He argues that "[t]here is no reference in the Factual Basis

No. 19-51094

or PSR to King or anyone else touching the complaining witness child on the dates the production of child pornography occurred." Therefore, he reasons, there is no evidence that the offense of production of child pornography *involved* sexual contact, as required to apply the enhancement.

The Government points to the fact that King admitted to "posing" minors in order to produce sexually explicit images and argues that "[p]osing would have involved sexual contact with the children." It also points out that "in the same paragraph [of the factual basis] detailing King's drying routine, the child reported that King took pictures of the child in his 'church suit.'" Presumably, the Government means to suggest that the two acts (the towel-drying and the "church suit" photographs) are connected.

As stated above, the "sexual contact" enhancement applies when the "offense" involves sexual contact. U.S.S.G. § 2G2.1(b)(2)(A). The term "offense" as used throughout the Guidelines is defined to include "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1b1.1 cmt. n.1(I). In § 1B1.3, "relevant conduct" is defined as "all acts . . . committed . . . by the defendant . . . that occurred during the offense of conviction, [or] in preparation for that offense . . . ." U.S.S.G. § 1B1.3(a)(1)(A). Therefore, the enhancement under § 2G2.1(b)(2)(A) applies whenever sexual contact (or sexual acts) can be considered relevant conduct to the offense of conviction.

The question here is thus whether the district court committed plain error at King's sentencing by concluding that the sexual contact between King and a child "occurred during" the production of child pornography or "in preparation for" the production of child pornography.

At sentencing, the factual findings of the district court need only be supported by a preponderance of the evidence. *United States v. Koss*, 812 F.3d 460, 466 (5th Cir. 2016) (citing *United States v. Betancourt*, 422 F.3d 240, 246

(5th Cir. 2005)). In determining whether a sentencing enhancement is supported by the preponderance of the evidence, a district court is permitted to draw "reasonable inferences" from the evidence before it. *See United States v. Wilcox*, 631 F.3d 740, 755, 757 (5th Cir. 2011). And under the plain error standard, we give "considerable deference" to the district court's factual determinations. *See Koss*, 812 F.3d at 466.

We conclude that the district court did not err in applying the "sexual contact" enhancement. True, it is plausible that King could have "posed" the children by giving them instructions, without necessarily touching them. But it is also plausible that "posing" the children involved sexual contact. And we think that it was a reasonable inference for the district court to conclude that, more likely than not, King did pose children in a way that involved sexual contact, especially in light of the undisputed evidence in the record that King had sexual contact with the complaining child on over 500 occasions.

The evidence suggesting a connection between the "church suit" photographs and the towel-drying incidents is a bit more tenuous. While the two activities are described in the same paragraph of the district court's factual basis, there is no explicit indication that they are connected. Nonetheless, the district court could have inferred from the evidence that one of the over 100 towel-drying incidents occurred close in time to, or in preparation for, a "church suit" (i.e., nude) photograph. Considering this evidence together with the evidence of "posing," and in light of the deference we give to a district court's factual determinations, we conclude that there is sufficient evidence to affirm the district court's application of the enhancement.

Because the district court's application of the "sexual contact" enhancement survives our plain error review, King would be unable to

No. 19-51094

demonstrate anything but harmless error with respect to the "distribution" or "use of a computer" enhancements. As explained above, even if King were to establish error with respect to those two enhancements, his Guidelines range would not be affected. We therefore need not reach whether these enhancements were applied in error.[3]

---

[3] The "distribution" enhancement provides for a two-level enhancement when a defendant "knowingly engaged in distribution." U.S.S.G. § 2G2.1(b)(3). "Distribution" is defined as:

> any act, including . . . production . . . related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.1 cmt. n.1. The Government argues that King "distributed" child pornography when he used the internet (specifically, email) to transfer images from his cell phone to his flash drive. But there is no evidence in the record that suggests King transferred the images to another person or otherwise made them available for public viewing, or that his cell phone or flash drive were ever outside his sole possession. *See United States v. Richardson*, 713 F.3d 232, 235 (5th Cir. 2013) ("Under the Guidelines, making the images available to others constitutes distribution . . . ." (quoting *United States v. Powers*, 379 F. App'x 347, 348 (5th Cir. 2010) (unpublished opinion)).

The "use of a computer" enhancement directs that a two-level enhancement should be applied:

> [i]f for the purpose of producing sexually explicit material . . . the offense involved . . . the use of a computer or an interactive computer service to (i) persuade induce, entire, coerce, or facilitate the travel of, a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct . . . .

U.S.S.G. § 2G2.1(b)(6)(B). The commentary to the enhancement describes that it "is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor." U.S.S.G. § 2G2.1 cmt. n.6(B). The Government acknowledges that there is no evidence that "King used his cellphone to communicate with the complaining child or other," and that King's challenge to this enhancement "has arguable merit based on the commentary."

No. 19-51094

## D

Finally, King argues that 18 U.S.C. § 2251(a) exceeds Congress's power to regulate interstate commerce under the Commerce Clause. He acknowledges that this court rejected this argument in *United States v. Kallestad*, 236 F.3d 225, 228 (5th Cir. 2000), but points us to the reasoning in the dissent in *Kallestad* and asks us to reconsider.

One panel of this court may not overrule another panel's decision without en banc reconsideration or a superseding contrary Supreme Court decision. *United States v. Lipscomb*, 299 F.3d 303, 313 n.34 (5th Cir. 2002). Thus, King's facial challenge to § 2251(a)'s constitutionality is foreclosed. *See id*.

## VI

For the foregoing reasons, King's conviction and sentence are AFFIRMED.