# United States Court of Appeals for the Fifth Circuit

_____

No. 24-20071

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Joel Ibarra,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CR-615-1

_____

Before Dennis, Haynes, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellant Joel Ibarra appeals the district court's judgment imposing a 105-month term of imprisonment for two drug offenses. Because the district court fashioned Ibarra's sentence based on clearly erroneous facts, we VACATE and REMAND.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

United States Court of Appeals
Fifth Circuit
**FILED**
December 16, 2024
Lyle W. Cayce
Clerk

No. 24-20071

I

In November 2020, a federal grand jury returned a two-count indictment charging Ibarra and a co-defendant, Candelario Loya-Tafolla, with conspiracy and possession with intent to distribute 500 grams or more of methamphetamine. Ibarra pleaded guilty to both counts. The probation officer's presentence investigation report ("PSR") calculated the U.S. Sentencing Guidelines sentencing range as 108 to 135 months imprisonment. The PSR also described the events leading to Ibarra's arrest, which unfolded over only two days. In particular, an undercover officer ("UCO") contacted an individual called "Silverado" to initiate the purchase of five kilograms of methamphetamine. Silverado agreed to the sale and had the UCO contact Ibarra to arrange the transaction. Loya-Tafolla drove the vehicle that arrived to meet the UCO. Ibarra sat in the front passenger seat. Law enforcement officers recovered 4.375 kilograms of actual methamphetamine. Loya-Tafolla and Ibarra were involved in coordinating the transaction with the UCO, and the PSR deemed both men to be average participants in the offenses. In addressing the issue of victim impact and restitution, the PSR stated that there were no identifiable victims of the offenses and that the Government had not responded to the probation officer's request for an assessment of the public harm.

Neither the Government nor Ibarra challenged the PSR. At the sentencing hearing, Ibarra moved for a downward variance and requested a seventy-two-month term of imprisonment. The district court adopted the PSR's sentencing calculations and factual findings, granted a slight downward variance to 105 months imprisonment, and denied Ibarra's request for a 72-month term of imprisonment because, inter alia, Ibarra had destroyed the lives of unnamed victims and manufactured controlled substances. Ibarra timely appealed the district court's judgment, challenging

the procedural reasonableness of the district court's sentence because those two factual findings are clearly erroneous.

## II

"Regardless of whether the sentence imposed is inside or outside the Guidelines range," a district court commits a significant procedural sentencing error by "selecting a sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016) (quotation omitted). Ibarra concedes that our review is for plain error because he failed to object to the district court's factual findings below. *See* Fed. R. Crim. P. 52(b). Under the plain-error standard, the defendant bears the burden to show (1) an error; (2) that is clear or obvious, rather than subject to reasonable dispute; and (3) that the error affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citations omitted). We then have discretion to correct the error, which we exercise if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See id.*

## III

The district court imposed a procedurally unreasonable sentence when it sentenced Ibarra to 105 months imprisonment for his drug convictions based on clearly erroneous facts. Specifically, and to a considerable extent, the district court based its denial of Ibarra's request for a downward variance to seventy-two months imprisonment on an unfounded belief that Ibarra had destroyed the lives of unnamed victims and had manufactured controlled substances.

Starting with the destruction of unnamed victims' lives, the district court found it a "problem" that Ibarra had "destroyed lives." The district court emphasized that "[t]here were peoples' lives that were affected [and]

that were destroyed by the narcotics and drugs that [Ibarra] put on the street." The district court observed its responsibility "to consider the people who are the victims in this case" when tailoring an appropriate sentence. But the PSR stated there were no identifiable victims of Ibarra's offenses and that the Government had not responded to the probation officer's request for an assessment of the public harm. The PSR never discussed Ibarra's involvement in any other drug transactions besides the charged offenses, and the drugs involved in this case never made it to an end user. Rather, the drugs involved here were possessed by Ibarra and then immediately recovered by police. Accordingly, the record does not support the district court's factual finding that Ibarra had distributed drugs that reached the street and destroyed the lives of "unnamed victims." That finding was clearly erroneous. *Castro*, 843 F.3d at 612.

The district court's finding that Ibarra had manufactured drugs is equally unsupported. The district court stated at the sentencing: "[T]here were people whose lives have been destroyed who went on to do things they wouldn't have otherwise done because they took the methamphetamine and the other drugs *that you were manufacturing*." Yet neither the charging documents nor the PSR mentioned drug manufacturing. On appeal, the Government argues that, to the extent the district court intended to make a finding that Ibarra was involved in the manufacturing of methamphetamine and other drugs, such a finding was not clearly erroneous. According to the Government, because Ibarra was involved in a conspiracy, he was responsible for the foreseeable acts of his co-conspirators, including Silverado, "who was a suspected member of an established drug trafficking organization in Mexico, where the methamphetamine originated." It cites a Drug Enforcement Administration ("DEA") article stating that most of the methamphetamine in the United States is produced in Mexico and then smuggled into the United States. Thus, the Government contends, it was

"more than plausible" for the district court to treat Ibarra's participation in the conspiracy "and association with a [drug-trafficking organization] in Mexico as involvement in the manufacture of methamphetamine."

We disagree. The district court did not cite the DEA article at sentencing and the article is not contained in the record. Additionally, the PSR stated only that Silverado was a *suspected* member of "an established and extensive" drug-trafficking organization. Nor did the PSR allege that Ibarra acted as a go-between for Silverado and a buyer on occasions other than the one involving the UCO in this case. In short, any finding that Ibarra manufactured controlled substances is unsupported by the record and therefore clearly erroneous. *See Castro*, 843 F.3d at 612.

Having identified errors, we next find that the district court's use of clearly erroneous facts to fashion Ibarra's sentence constitutes plain error. An error is plain if it is "clear and obvious" at the time of appellate consideration. *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 298 (5th Cir. 2008). We typically find an error to be plain if there is controlling caselaw addressing the issue. *See, e.g.*, *United States v. Benitez*, 809 F.3d 243, 250 (5th Cir. 2015). Such is the case here. The Supreme Court in *Gall* made clear that "selecting a sentence based on clearly erroneous facts" is a "significant procedural error." 552 U.S. at 51. Panels of our court have also repeatedly found that district courts commit a plain procedural error if they sentence a defendant based on erroneous facts. *See, e.g.*, *United States v. Maldonado*, 726 F. App'x 263, 264 (5th Cir. 2018) (unpublished); *United States v. Jimenez-Espinoza*, 408 F. App'x 823, 824 (5th Cir. 2011) (unpublished).

The error also affected Ibarra's substantial rights. To decide if an error affects substantial rights, we must determine "whether the error increased the term of a sentence, such that there is a reasonable probability of a lower sentence on remand." *United States v. Escalante-Reyes*, 689 F.3d 415, 424 (5th

Cir. 2012) (en banc) (quoting *United States v. Garcia-Quintanilla*, 574 F.3d 295, 304 (5th Cir. 2009)). In analyzing this question, we consider the reasoning articulated by the district court at sentencing. *See United States v. Cruz-Pallares*, 396 F. App'x 170, 172 (5th Cir. 2010) (unpublished). Our court has vacated sentences where the district court "appeared to rely, to a considerable extent, on . . . mistaken facts," *id.*, and when the incorrect fact was the primary fact mentioned by the district court as a reason for the sentence, *see Jimenez-Espinoza*, 408 F. App'x at 825. Here, the district court depended on the above-discussed clearly erroneous facts during Ibarra's approximately twenty-minute-long sentencing hearing, meaning there is a reasonable probability of a lower sentence on remand. *Escalante-Reyes*, 689 F.3d at 424 (noting the third prong of plain error was satisfied because, "[i]n a relatively short [fifteen-minute-long] sentencing hearing, the [improper] issue loomed large").

Finally, we opt to exercise our discretion to correct the error because it implicates constitutional due process concerns—the exact type of error that affects the fairness, integrity, or public reputation of criminal proceedings. *United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. Unit B Nov. 1981) ("Sentences based upon erroneous and material information or assumptions violate due process."); *United States v. Knowles*, 29 F.3d 947, 951 (5th Cir. 1994) ("[W]e have long held that, under the plain error inquiry, errors of constitutional dimension will be noticed more freely than less serious errors." (citations omitted)). The appropriate remedy is vacatur and remand for the district court to reassess the sentence with a correct understanding of the record.

## IV

For these reasons, we VACATE the district court's judgment and REMAND for further proceedings not inconsistent with this opinion.